(No. 42820.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GEORGIA CARRADINE, Appellant.

*Opinion filed September 20, 1972.*

GERALD W. GETTY, Public Defender, of Chicago (JOHN E. HUGHES, HAROLD A. COWEN and JAMES J DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and WILLIAM J. HEDRICK, Assistant State's Attorneys, of counsel), for the People.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The Cook County circuit court found Georgia Carradine to be in direct contempt of court for her refusal to testify, and sentenced her to imprisonment for six months in the Cook County jail. She appealed directly here.

On September 11, 1969, Mrs. Carradine appeared before Judge Downing as a State's witness in a criminal prosecution; she had witnessed a homicide and given a statement to an assistant State's Attorney. Having failed to respond to a subpoena, she was in court pursuant to a bench warrant, and after answering certain preliminary questions refused to testify further, indicating that she was in fear of her life and the lives of her children. No fifth-amendment privilege was asserted or available. When Mrs. Carradine persisted in her refusal to testify, despite offers of protection for her and her family and the advice of appointed counsel, a contempt order was entered. *Mittimus,* however, was stayed until September 14 to allow the contemnor to reconsider her actions. On September 15 and September 24, accompanied by counsel, she appeared before the court and still refused to testify notwithstanding offers to relocate her and her family to other sites in Chicago, this State or the continental United States; on each occasion it was ordered that she be committed to the county jail until she agreed to testify. On October 1, since Mrs. Carradine still persisted in her refusal, the trial judge entered the contempt order here in question.

While the sufficiency of the contempt order is questioned, that question is not a substantial one. It is argued that the order must set forth fully and clearly the facts out of which the contempt arises and that a reviewing court is limited to that statement of facts; and inasmuch as the order in this case does not indicate the contemnor's reason for refusing to testify, her refusal is susceptible of explanation in a manner which could relieve her of contempt, and therefore the order is allegedly defective.

We cannot agree. The order states the circumstances surrounding the contempt, the basis for the contempt finding and states that the refusal to testify was not based upon a fifth-amendment privilege against self-incrimination. Even assuming, *arguendo,* that the instant contempt order did not sufficiently state the supporting facts, we have recently expressly recognized that the record may be examined to supply the deficiency. (*People v. Baxter (1972), 50 Ill.2d 286, 290.*) Here, the record amply does so. "Contempt of court has been generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." (*In re Estate of Melody (1969), 42 Ill.2d 451, 452.*) The contemnor's refusal to testify, without claim of fifth-amendment privilege, despite warnings of the consequence of her action and the advice of court-appointed counsel, clearly obstructed the court in its administration of justice.

The more difficult question is the contemnor's request, predicated upon the extenuating circumstances surrounding her refusal to testify, that her punishment be reduced to the two weeks already spent in jail. Those circumstances include the fact that Mrs. Carradine had been separated from her husband for some four years, had six children aged 5 to 18 at home, and was supported by payments from her husband and supplemental welfare funds; that there seems little reason to doubt her refusal to testify resulted solely from her fear of harm to herself and her children if she testified against the defendants who apparently were members of the Blackstone Rangers, a youth gang; that she believed she had been "tricked" and lied to by the assistant State's Attorney to whom she had given a statement, because, as she stated, he told her she would not have to appear and testify and that, absent this assurance, she never would have given him the statement; that she did not believe the law enforcement authorities could protect her from the "Stones" for, as she put it:

> "THE WITNESS: Well, look, Judge, I am going to tell you, I live in the middle of the slums, down in the slums. Where I live the police don't even come in there even if we call. I called the police one night about a fight. You'd think they were going to kill one another. But the police don't even come up in there where I live. So, how are they going to protect me and my family when they don't even come up in the building where we live?"

Nor does she believe that relocating her family would solve the problems, for the "Stones" were "everywhere."

It is completely clear from the record that Mrs. Carradine understood the likely results of her refusal to testify and deliberately chose to incur imprisonment rather than expose herself and her family to what she considered to be the certainty of serious physical harm or death. The conscientious trial judge appointed counsel for her and patiently, clearly and repeatedly explained the situation, urging her to change her mind and reiterating the offers of protection and relocation; the proceedings were continued on several occasions in order that she might have an opportunity to reconsider her decision.

No useful purpose would be served by prolonged discussion. The reluctance of witnesses to testify is not an uncommon problem, although the circumstances here are particularly distressing. The contempt proceedings were conducted with eminent fairness, and, in our opinion, the judgment and sentence must be affirmed. The fundamental reason therefore was stated by the trial court: "*** one of the problems that the Court has is that unless we receive the cooperation of the citizens who see certain alleged events take place these events are not going to be rooted out, nor are perpetrators of these acts going to be brought before the bar of justice unless citizens stand up to be counted, and I think this [fear] is not a valid reason for not testifying. If it's a valid reason then we might as well close the doors."

The judgment of the Cook County circuit court is affirmed.

*Judgment affirmed.*