(No. 46453.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BARBARA DENSON, Appellant.

*Opinion filed January 21, 1975.*

Sam Adam, Edward M. Genson, James J. Cutrone, and Alan D. Blumenthal, all of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

This case originated in the circuit court of Cook County and involves a sentence of 6 months for contempt. The appellate court affirmed the sentence (16 Ill. App. 3d 230), and we granted leave to appeal. Facts essential to the decision of this case are related in the appellate opinion, and we here adopt that statement of facts.

The appellant was called to testify as a witness for the State in the murder trial of Curtis Berry. Although not legally married, she had lived with him as his wife for a number of years, and had given incriminating testimony against him before the grand jury, the result of which was Berry's indictment for murder. The appellant was called as a witness at the trial, was then made a court's witness, and eventually was granted immunity under article 106 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, pars. 106—1, 106—2), which provided:

> "106—1. Granting of Immunity. In any investigation before a Grand Jury, or trial in any court of record, the court on motion of the State may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce.
>
> 106—2. Effect of Immunity. Such order of immunity shall forever be a bar to prosecution against the witness for any offense shown in whole or in part by such testimony or other evidence except for perjury committed in the giving of such testimony."

She still refused to testify, claiming that the immunity granted was not as broad as her fifth amendment rights; however, the statute in question was so construed in *People v. Walker* (1963), 28 Ill.2d 585, where, without citing authority, the People suggested that immunity is not to be extended to prior perjury, and there the court, at page 590, stated: "The short answer to the People's suggestion, of course, is that the statute contains no exception as to prior perjury, and that such an exception would render it invalid." And, at page 591, stated: "A charge of perjury cannot, therefore, be predicated upon

the falsity of those statements. The situation is not altered by section 32–2 of the Criminal Code of 1961 ***. In the words of the immunity statute, the offense of perjury by inconsistent statements was shown 'in whole or part' by the testimony that he gave under the statutory grant of immunity."

Ordinarily, the fact that the scope of immunity was sufficient would be the conclusive answer to the claim that the contempt holding was proper. The circumstances of the case at bar are unique, however, and resort should be had to the record. The initial confusion began during the trial of Curtis Berry when on May 25, 1971, Miss Denson was called as a witness by the State and requested to confer with her attorney, Sam Adam, before answering any questions. The court directed her to answer the prosecutor's questions, noting that she had not claimed "certain protections." She proceeded to answer the questions put to her, whereupon the prosecutor claimed that she was answering in a manner which indicated she would be a hostile witness and asked that she be made a court's witness so that he might cross-examine her. A hearing was held outside of the presence of the jury, and the judge ruled that she should be called as a court's witness.

After the noon recess, Miss Denson returned with her attorney, and was given an opportunity to confer with him. Attorney Adam then made the following representation to the court:

> "If your Honor please. I represent Miss Denson a witness before your Honor, and she and I have conferred today and on other occasions, and I have also been in your Honor's court this morning and heard some of the questions asked of her and some of her responses outside the presence of the jury.
>
> After our conference, Judge, it is my opinion if she testifies in this case that answers to questions asked of her may well tend to incriminate her, and at this time, your Honor, if the Court please, she would assert her right not to testify on the grounds that any answers given by her may result in incriminating evidence being used or being

asserted by the State against her. She would rely upon the 5th Amendment to the Constitution and the 14th Amendment to the Constitution.

Pursuant to your Honor's direction I did advise her that there are sanctions, if your Honor please, that your Honor might take such as contempt, if in fact her answers would not incriminate her.

But it is her honest belief, and after conferring with me it is my opinion also, and I have advised her, having testified before the Grand Jury and having made statements at other places, and also statements under oath this morning, it is my advise to her, Judge, if she testifies now in this cause at this time her answers to questions may tend to incriminate her, and she would assert that privilege not to testify."

When Adam pointed out that Miss Denson had not been represented by counsel when she testified before the grand jury the prosecutor replied:

"She was represented by the State's Attorney there. I may draw the attention of the Court to the fact she is Count 3 of this indictment, a victim in Count 3 of the indictment, and she was represented by her lawyer, and her lawyer is the State's Attorney of Cook County at that time, and her rights were fully protected by the State's Attorney of Cook County."

Eventually it was established that Miss Denson was going to refuse to answer any questions on the basis that to do so would violate her rights under the fifth amendment to the United States Constitution, and the State agreed to provide her with immunity from prosecution.

Upon the People's motion, the trial judge then entered an order of immunity under article 106 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 106—1 *et seq.*). The original order of immunity submitted by the People read as follows:

"It is hereby ordered that Bar bara Denson, pursuant to Chapter 38, Article 106, is hereby granted immunity from prosecution *** from all liability to be prosecuted or punished on account of any matter except Chapter 38,

Sec. 32–2, Illinois Revised Statutes, 1969, to which she
shall testify."

Before the judge signed the proposed order quoted above,
counsel for Miss Denson noted its broad reference to the
Illinois perjury statute (Ill. Rev. Stat. 1969, ch. 38, par.
32–2) and in an ensuing colloquy, the court, with the
concurrence of Miss Denson's counsel and the assistant
State's Attorney entered the following amended order:

"This cause coming on to be heard upon motion of
the PEOPLE OF THE STATE OF ILLINOIS, and the
Court being fully advised in the premises:
IT IS HEREBY ORDERED that BARBARA DEN-
SON, pursuant to Chapter 38, Section 106, is granted
immunity from prosecution in the above entitled cause
from all liability to be prosecuted or punished on account
of any testimony or other evidence she may be required
to produce except for perjury committed in the giving of
such testimony."

The trial judge, with the agreement of the assistant
State's Attorney, made it clear, before entering this
amended order, that the immunity being conferred had the
full breadth of that granted by article 106 of the Code of
Criminal Procedure.

After consulting with her attorney following entry of
the immunity order, Miss Denson again refused to testify.
The trial judge then found Miss Denson in contempt of
court and entered the following order:

"IT IS THEREFORE ORDERED AND ADJUDGED
that the contemnor, Barbara Denson, because of the said
direct contempt of this Court is hereby committed to the
County Jail of Cook County *** until such time as she
appears before this Court and answers the questions
propounded to her thereby purging herself of her afore-
said contumacious acts."

Thereafter the contemnor again appeared in court and
stated she would not testify, and the court ruled as
follows:

"The Court is of the opinion that the record clearly
shows that Miss Denson has violated the order of the

Court to testify even though she has been granted immunity and that she has committed contumacious conduct that is a direct contempt of this Court, and this Court now sentences her to six months in the County Jail or until such time as she purges herself of her contempt, which means that if Miss Denson should change her mind and decide to testify at any time prior thereto she may purge herself of her contempt and be relieved of this order."

The basic problem was that the court and the attorneys could not agree on what testimony was to be included in the order, *i.e.,* what constituted "such testimony."

It is readily apparent that the prosecutor did not believe that Miss Denson had been granted immunity from the perjury, if any, which she had previously committed before the grand jury. It is less clear whether or not the prosecutor thought that he would be able to use the testimony given under immunity to establish that prior perjury. It is fair to assume that the prosecutor did intend to so use the testimony if it was inconsistent with the grand jury testimony or he would have agreed to Adam's request that the State agree not to use the grand jury testimony vis-a-vis the immunity testimony for the purpose of showing inconsistent statements. Section 32—2(a)(b) of the Criminal Code in force at that time (Ill. Rev. Stat. 1969, ch. 38, par. 32—2(a)(b)) provided, in pertinent part:

"(a) A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true.

(b) Proof of Falsity.

An indictment or information for perjury alleging that the offender, under oath, has made contradictory statements, material to the issue or point in question, in the same or in different proceedings, where such oath or affirmation is required, need not specify which statement is false. At the trial, the prosecution need not establish

which statement is false."

The fear of Miss Denson and her attorney was that although the immune testimony could not, in and of itself, support a conviction for perjury, if it could be used to show inconsistencies with the grand jury testimony, the result would be for the testimony to incriminate her nevertheless. *People v. Walker,* 28 Ill.2d 585, established that such testimony given under immunity could not be used for that purpose. However, it is clear that neither Adam, Levinson, nor the Judge referred to the *Walker* holding in reference to this case. The question then becomes, in light of the confusion with reference to the law by the attorneys and the court, did Miss Denson's refusal to answer amount to contumacious conduct.

Section 106—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 106—3) provided:

> "Any witness who having been granted immunity refuses to testify or produce other evidence shall be in contempt of court subject to proceedings in accordance to law."

In the case of *Anderson v. Macek* (1932), 350 Ill. 135, 138, the court noted: "Whether a direct contempt has been committed depends upon the act and not upon the alleged intention of the offending party. [Citation.] Nor is it a defense that defendants in error sought legal advice and acted, in part at least, upon it. The advice of attorneys is never a justification for contempt. *People v. McWeeney,* 259 Ill. 161."

In light of *People v. Walker,* 28 Ill.2d 585, and the foregoing cases, we are constrained to hold that Miss Denson was, in fact, in contempt of court for failure to obey the order to testify under the grant of immunity as made. This does not, however, preclude the court from considering the reasons behind the allegedly contumacious conduct when passing sentence for that conduct.

In determining whether the sentence imposed was proper we must consider the argument that the contempt

order was for civil contempt, rather than criminal contempt, and that, therefore, the contemnor could not be held in custody after the end of the trial in question, for then it would be too late for the contemnor to purge herself. In *People v. Redlich* (1949), 402 Ill. 270, 277-278, the court stated:

"Contempts have been classified as civil and criminal contempts. Contempt orders in the two classes of cases are of different kinds and made to different ends. Criminal contempts include acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice, while civil contempts consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court. (*Porter v. Alexenburg*, 396 Ill. 57; *Wilson v. Prochnow*, 359 Ill. 148.) *** '*** Some courts adhere to the rule defining them as civil or criminal contempts according to the character of the suit in which they occur, designating them as civil contempts if the original suit is a civil suit and as criminal contempts if they arise in an original suit criminal in form. In most cases where they thus rest on the boundary line they are both civil and criminal contempts, and so far as the rights of the contemnors are concerned may be punished as either.' "

In *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill.2d 407, 409-410, the court stated:

"Contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized as *sui generis*, and may partake of the characteristics of both. (*People v. Doss*, 382 Ill. 307; *People ex rel. Martin v. Panchire*, 311 Ill. 622; *People v. Parker*,

397 Ill. 305.) Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while it has been said that civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. (*People v. Redlich,* 402 Ill. 270; *People v. McDonald,* 314 Ill. 548.) These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and even imperceptible. [Citation.] A further guide may be found in the purpose of punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been done, whereas imprisonment for civil contempt is usually coercive and, as was said in the case of *In re Nevitt,* (8th cir.) 117 Fed. 448, 'he [the contemnor] carries the key of his prison in his own pocket.' "

And at pages 410 and 411, the court further stated:

"*People v. Spain,* 307 Ill. 283, involved a contempt charge for failure to answer questions before a grand jury on the ground that respondent's answers might tend to incriminate him. The case turned on the constitutional inhibition against self-incrimination, but the opinion went on to say that the contemnor was entitled to the presumption of innocence until his guilt was established beyond a reasonable doubt."

Under existing Illinois case law and the record in this case, it is clear that at first an order finding only civil contempt was entered, and this was later replaced with an order for criminal contempt for past failure to answer questions as ordered, with the opportunity to lessen the sentence to time served if the contempt was purged.

Miss Denson argues, however, that the case of *Shillitani v. United States* (1966), 384 U.S. 364, 16 L. Ed. 2d 622, 86 S. Ct. 1531, precludes courts from using such contempt orders which are essentially dual in nature. That case involved a disagreement as to whether a contempt order was criminal or civil in nature. The Supreme Court differed with the district and circuit courts and found that the order was civil in nature because it was for the purpose of coercing testimony and held that the contemnor could not be imprisoned beyond the time in which the contempt could be purged. The test stated by the court is, "what does the court primarily seek to accomplish by imposing sentence?" (384 U.S. 364, 370, 16 L. Ed. 2d 622, 627.) Here it is clear that the judge had two separate and distinct purposes in mind. One, of course, was the desire to compel the witness to testify. The other was to punish the contemnor for refusing to do what she had been ordered to do, *i.e.*, answer certain questions put to her by the prosecutor under a grant of immunity. The court obviously felt that a criminal sanction was warranted, and such a conclusion is supported by the record. *People v. Walker* (1963), 28 Ill.2d 585.

The question then becomes, must the court give up any occasion to use its contempt powers to compel the witness to testify in order to enter a valid order of criminal contempt? We do not deem *Shillitani* to so hold. That case centered on a specific finding that the contempt order was for one purpose or the other on the facts. The case at bar more properly falls into the void that existed in the majority opinion, as pointed out by Justice Harlan in his dissent when he said: "What the Court fails to do is to give any reason in policy, precedent, statute law, or the Constitution for its unspoken premise that a sentencing judge cannot combine two purposes into a single sentence of the type here imposed." (384 U.S. 364, 383, 16 L. Ed. 2d 622, 636.) We do not read the majority opinion quite as broadly as did Mr. Justice Harlan, and hold that the use

of valid dual-purpose contempt orders was not precluded by the majority opinion in *Shillitani*, and, for the policy considerations stated above, we find that the contempt order in this case was a valid dual-purpose order.

The only remaining question is whether the sentence imposed in this case is excessive. Under the circumstances of the case we hold that it is not, and the judgment is affirmed.

*Judgment affirmed.*