# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. Geiger*, 2011 IL App (3d) 090688**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRELL D. GEIGER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-09-0688 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | October 3, 2011<br><br>November 10, 2011<br>November 10, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 20-year sentence imposed on defendant based on his refusal to testify in a trial for a double murder was not excessive or grossly disproportionate, notwithstanding defendant's contentions that the sentencing factors were improperly balanced by the trial court, that he acted without knowledge of the consequences of his conduct, and that no other similar sentence had been imposed in Illinois, since defendant had knowledge of events directly linking the defendant in the underlying case to the charged offenses, defendant's refusal to testify hindered the administration of justice, defendant had a long and serious criminal record, he was already incarcerated, he was admonished that he had no fifth amendment right to refuse to testify because he was not at risk of incriminating himself, and he was informed that he could be sentenced to a period of years consecutive to the sentence he was already serving if he persisted in refusing to testify. |

| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 08-MR-518; the Hon. Clark E. Erickson, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Fletcher P. Hamill, of State Appellate Defender's Office, of Ottawa, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Stephen M. Soltanzadeh, Assistant Attorneys General, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion. Justice Wright concurred in the judgment and opinion. Justice Holdridge dissented, with opinion. |

**OPINION**

¶ 1     Following a bench trial, the circuit court of Kankakee County convicted defendant, Terrell Geiger, of direct criminal contempt of court and sentenced him to 20 years' incarceration. Defendant appeals, claiming his sentence is excessive and grossly disproportionate to the nature of the offense.

¶ 2                                        FACTS

¶ 3     The record indicates that on April 8, 1999, defendant gave a statement to the police in which he discussed his knowledge of facts surrounding the double murder of Michael Cox and Lazeric Martin. While at a hotel, defendant heard Joe Mason and Javar Hollis discussing "sticking someone up for a couple of G's." Howard Wilson, Jimmy Murry and Terry Lowe were in attendance at the hotel that day as well. After walking around, the group retreated to defendant's room, where they "were hanging out and drinking."

¶ 4     Defendant's statement indicates that while the group was together, "Javar was talking like, 'I'm going to get me a nigger,' " which indicated to defendant that Javar intended "to go do the robbery." Defendant's statement continues noting that, "Awhile after Joe and Javar left, a girl named Nina came to our room and told us that she was over at Lonnie's house and

she heard someone next door get their head blown off. Joe came back to the room first. I went outside the room and saw Javar running to the hotel. Javar came up to me and said, 'it took me a long time but I got that nigger.'"

¶ 5 Defendant told police that while he was with Javar that night, "Javar told me what had happened." Javar indicated that Lazeric was panicking after Javar began robbing him. Javar noted he then shot Lazeric in the leg after which Lazeric said, "Just spare me my life." Thereafter, Joe shot Lazeric twice in the head. Javar indicated that he then went outside and shot Michael Cox with a pistol-grip Mosseberg shotgun. Defendant's statement revealed other material facts surrounding the murders as well.

¶ 6 The State did not call defendant to testify during Javar Hollins' first trial for the murder of Lazeric Martin and Michael Cox. Hollins was convicted, but this court reversed his conviction in *People v. Hollins*, 366 Ill. App. 3d 533 (2006), due to issues involving jury selection. The State did, however, call defendant to testify in the trial of Hollins' codefendant, Joseph Mason. In the trial against Mason, defendant testified consistent with the statement given to the police.

¶ 7 While Geiger was in the custody of the Department of Corrections, the trial court issued a writ of *habeas corpus ad testificandum*, ordering his presence as a witness in the second murder trial of Hollins. When calling Geiger to the stand, the prosecution informed the trial court that it expected defendant to assert his right against self-incrimination under the fifth amendment (U.S. Const., amend. V), but argued Geiger's testimony would not be inculpatory. The trial court asked for an offer of proof. The State proffered that it believed Geiger, "if permitted to testify," would testify consistent with his prior statement to the police and testimony during the trial of Joseph Mason. The prosecutor suggested that if defendant refused to testify against Hollins, he should be sentenced to 180 days in jail with no day-for-day credit for direct criminal contempt. The trial court indicated it could not deny defendant day-for-day good time, but stated it could sentence defendant to a term longer than 180 days if the State filed a formal contempt petition.

¶ 8 The trial court noted, "This is someone who everyone is in agreement that he is–that he does not have a Fifth Amendment right." The State then called defendant to the stand. The trial judge informed him that he had no right to remain silent based upon his testimony in the trial against Mason and his 1999 statement to the police. Specifically, the trial court stated defendant was "not subjecting yourself to any criminal–to being charged with any crime as a result of your testimony. Okay? Therefore, you don't have a right to take the Fifth Amendment."

¶ 9 Nevertheless, defendant informed the court that he intended to assert his fifth amendment right and not testify. The trial court informed defendant that if the State filed a formal petition for criminal contempt of court, the possible punishment could be "a period of years" in prison. Defendant indicated he understood.

¶ 10 The State then questioned defendant. He indicated he was present at the hotel on the date of the murders. Thereafter, defendant refused to answer any further questions. The judge admonished defendant that he had no right to refuse to testify; defendant persisted in his refusal.

¶ 11     During a recess, the State filed a formal petition charging defendant with criminal contempt. The petition alleged that defendant violated the judge's order to testify, even though he had no right under the fifth amendment to do so. The petition asserted that due to the nature of the serious charges against Hollins and defendant's knowledge of material facts, an appropriate sentence would be 20 years' imprisonment.

¶ 12     Following the filing of the State's petition, the trial court then appointed counsel to represent defendant. Geiger was again called to the stand in the Hollins retrial and informed that the State was offering him immunity for his testimony. The trial court noted that so long as defendant's testimony was truthful, it could not be used against him in any criminal prosecution. Defendant indicated he understood and then conferred with his counsel. After conferring with counsel, defendant continued in his refusal to testify and the Hollins trial concluded without defendant's testimony.

¶ 13     Approximately six weeks thereafter, defendant filed a motion to dismiss the petition, claiming his proposed testimony was inculpatory and, as such, he possessed a right to refuse to testify under the fifth amendment. Ultimately, the judge denied defendant's motion. Defendant waived his right to a jury trial and a bench trial commenced. The parties stipulated to certain transcripts and argued their respective positions. The trial court found defendant guilty of direct criminal contempt.

¶ 14     The court scheduled a sentencing hearing and ordered a presentence report. The presentence investigation report indicated that defendant has felony convictions in Illinois for delivery of a controlled substance near a park or school (Class 1) and manufacturing or delivering between 15 and 100 grams of cocaine (Class X). Defendant also has two felony convictions in the state of Wisconsin for manufacturing or delivering controlled substances. Defendant also has one Class A misdemeanor conviction for obstructing a police officer. While incarcerated, defendant earned his GED. Defense counsel requested a sentence of 6 months' incarceration and the State requested a sentence of 20 years' incarceration.

¶ 15     The trial court noted that defendant seemed defiant when he refused to testify and noted defendant did not seem afraid of retaliation for his testimony. The judge commented on defendant's criminal history and imposed a sentence of 20 years' incarceration. Defendant filed a motion to reconsider the sentence, which the trial court denied. This is defendant's direct appeal.

¶ 16                                                    ANALYSIS

¶ 17     Defendant's sole claim in this appeal is that his 20-year sentence of incarceration is excessive and grossly disproportionate to the nature of the offense. Specifically, defendant submits that: (1) the trial court improperly balanced sentencing factors when setting his 20-year sentence; (2) he "acted without knowledge of the consequences of his conduct" and, as such, his sentence is excessive; and (3) his sentence must be reduced as his research has revealed no published Illinois decisions in which a defendant has received a similar sentence.

¶ 18     We note defendant does not contest, and actually concedes, he committed direct criminal contempt of court. Defendant does not seek a reversal of the court's finding of contempt. He simply requests that we reduce his sentence pursuant to our authority under Supreme Court

Rule 615(b)(4). Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967).

¶ 19 We review the sentence imposed by the trial court under the abuse of discretion standard. *In re G.B.*, 88 Ill. 2d 36, 46 (1981). Our supreme court clearly stated in *People v. Alexander*, 239 Ill. 2d 205 (2010), that a "reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." *Alexander*, 239 Ill. 2d at 212. A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. *Id.* at 212. A sentence will be deemed an abuse of discretion where it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 20 Our supreme court has consistently reminded courts of review that the " 'trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Alexander*, 239 Ill. 2d at 213 (quoting *Stacey*, 193 Ill. 2d at 209). "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 212-13 (quoting *People v. Fern*, 189 Ill. 2d 48, 53 (1999)).

¶ 21 We acknowledge that reasonable people could conclude that defendant's sentence is excessive. However, in light of the factors discussed below and the standard of review addressed above, we find no basis to reverse the trial court.

¶ 22 A. Sentencing Factors

¶ 23 In claiming the trial court improperly weighed various sentencing factors leading it to issue him an excessive sentence, defendant notes that the Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Defendant acknowledges that when fashioning a sentence, a trial court must balance several factors including: the nature and circumstances of the offense; the defendant's conduct in the commission of the offense; defendant's personal history including his age, demeanor, habits, mentality, credibility, criminal history, general moral character and social environment, and education. *People v. Quintana*, 332 Ill. App. 3d 96 (2002).

¶ 24 Admitting his criminal record weighs in favor of a significant penalty, defendant submits his 20-year sentence is clearly excessive when all other factors are properly considered. He claims the trial court failed to properly consider that his actions were nonviolent in nature. Defendant further contends his refusal to testify did no real harm as Hollins was convicted without his testimony. As such, defendant asserts we must reduce his sentence. We disagree.

¶ 25 That a trier of fact ultimately found Hollins guilty does not negate the fact that defendant possessed material and significant knowledge of facts surrounding a double homicide yet refused to testify to them. Criminal contempt sanctions are retrospective in nature and punish the contemnor for past acts which he cannot undo. *People v. Lindsey*, 199 Ill. 2d 460, 468

(2002). It is well established that all courts have the inherent power to punish contempt and such power is essential to the maintenance of their authority and administration of judicial powers. *People v. Loughran*, 2 Ill. 2d 258, 262 (1954). Direct criminal contempt is a unique crime that does not have a statutory maximum sentence (720 ILCS 5/1-3 (West 2008); *People v. Stollar*, 31 Ill. 2d 154 (1964)) and has been defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into dispute. *People v. Simac*, 161 Ill. 2d 297, 305 (1994).

¶ 26    Defendant's knowledge of the events directly linked Hollins to the planning and execution of the robbery and homicides. Defendant's contemptuous conduct severely limited the evidence of Hollins' involvement and hindered the administration of justice for the murders of two men. The harm caused by defendant's conduct was not just to the prosecution of Hollins, but to the court and its authority. Allowing defendant not to testify or handing down a light sentence to such a habitual offender would have undoubtedly invited future witnesses to choose a contempt sentence over following the court's order to testify in serious criminal cases, such as other double murder trials. At the time he refused to testify, defendant was already incarcerated. The trial judge specifically noted that defendant had no fear or even an "inkling of concern" that he would be prosecuted for ignoring the court's order. The court noted, "I saw pure scorn for the judicial system in the defendant's face."

¶ 27    While we acknowledge, as defendant indicates, his actions were not violent, they were nonetheless clearly calculated to hinder or obstruct the court in its administration of justice in a double murder case. When coupled with defendant's criminal history of previously obstructing a police officer, selling controlled substances near a park or a school and Class X manufacturing or delivery of cocaine, we cannot say the trial court abused its discretion in weighing factors relevant to fashioning defendant's sentence. At the age of 25, defendant had already received sentences of six months in jail, two concurrent terms of two years' incarceration, a four-year term of incarceration and a six-year term of incarceration. These terms were clearly insufficient to deter defendant's activities.

¶ 28                    B. Defendant's Knowledge of the Consequences

¶ 29    Defendant also claims his actions were mitigated by a mistaken belief that he had a right not to testify and that he failed to comprehend the possible term of incarceration. Again, we disagree. After being called to the stand, defendant acknowledged that he was subpoenaed to testify at the trial and ordered by the court to do so. However, he indicated that he wished to invoke his right under the fifth amendment and not testify as he believed he would incriminate himself should he testify. When asked by the court what led him to this belief, defendant did not respond.

¶ 30    Based on his prior testimony against Mason and statement given to the police in 1999, the trial court informed defendant that he would not be subject to criminal prosecution as long as his testimony was truthful and, again, ordered him to testify. The court admonished him that he had no fifth amendment right to refuse to testify because he was not at risk of incriminating himself and further informed him that he was subjecting himself to direct

criminal contempt by refusing to testify. The trial court specifically informed defendant that he could be sentenced to a "period of years imprisonment to run consecutive" to a sentence already being served for a narcotics offense.

¶ 31    After the State filed the petition charging defendant with direct criminal contempt, the trial court informed defendant that the Attorney General's office was offering him "use immunity," meaning he could not be prosecuted "for any crimes arising out of what he said on the stand," so long as his testimony was truthful. Defendant indicated he understood this offer.

¶ 32    The record overwhelmingly belies defendant's assertion that he operated under the mistaken belief that he had a right not to testify or that he had no idea he could be sentenced to 20 years' incarceration. The petition filed by the State specifically requested a 20-year sentence. In conjunction to informing defendant that a potential sentence included a "period of years," the trial judge read the petition seeking the 20-year sentence in open court to defendant and his counsel. We find defendant's assertion that he was unaware he could receive a 20-year sentence to be without merit.

¶ 33    Defendant argues that *People v. Carradine*, 52 Ill. 2d 231 (1972), supports his contention that he "acted without knowledge of the consequence[s] of his conduct." We fail to see how. Just as in the case at bar, the court in *Carradine* noted the record adequately established the court repeatedly warned defendant "of the consequence[s] of her action" and appointed counsel to represent her in the matter. *Carradine*, 52 Ill. 2d at 233. Despite the repeated warnings, the *Carradine* court found that the defendant "deliberately chose to incur imprisonment rather than [testify]. The conscientious trial judge appointed counsel for her and patiently, clearly and repeatedly explained the situation ***." *Carradine*, 52 Ill. 2d at 234.

¶ 34    Defendant cites to *Carradine* and claims that it "cannot be said that [he] deliberately chose to incur a twenty-year sentence when he refused to testify in this case." Again, the record clearly establishes that defendant herein, much like the defendant in *Carradine*, "chose to incur imprisonment rather than" testify. We fail to see how defendant's choice of incarceration is rendered less than deliberate by the fact that the trial court imposed the exact term of imprisonment defendant knew the State was seeking.

¶ 35                                   C. Published Decisions

¶ 36    Finally, citing to numerous cases (*Carradine*, 52 Ill. 2d at 234; *People v. Cooper*, 202 Ill. App. 3d 336 (1990); *People v. Schultz*, 380 Ill. 539 (1942); *People v. Fields*, 177 Ill. App. 3d 129 (1988)), defendant argues his sentence is excessive as his "research has not revealed a single published Illinois opinion where a defendant received a sentence comparable to the instant sentence for refusing to testify at trial." However, defendant acknowledges that it is inappropriate for a court to engage in comparative sentencing. See *People v. Fern*, 189 Ill. 2d 48, 55 (1999) ("We agree with those decisions rejecting cross-case comparative sentencing as a basis for challenging [the excessiveness of] a sentence. We find that such an analysis does not comport with our sentencing scheme's goal of individualized sentencing and would unduly interfere with the sentencing discretion vested in our trial courts.").

¶ 37    The fact that there is no reported decision affirming a 20-year sentence of incarceration for direct criminal contempt is not a proper basis to reduce defendant's sentence. "The propriety of the sentence imposed in a particular case cannot properly be judged by the sentence imposed in another, unrelated case. Simply because a lesser sentence was imposed in another case does not lead to the conclusion that the more severe sentence imposed in the case at hand is excessive." *Fern*, 189 Ill. 2d at 56. As such, we refuse to engage in the cross-comparison analysis defendant requests and evaluate his sentence in light of those handed down in other cases or those imposed for other crimes such as perjury. It would clearly be improper to do so. *Fern*, 189 Ill. 2d at 56.

¶ 38                                                CONCLUSION

¶ 39    For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 40    Affirmed.

¶ 41    JUSTICE HOLDRIDGE, dissenting:

¶ 42    I respectfully dissent. The central inquiry is whether a 20-year sentence for direct criminal contempt of court was excessive. Trial courts have great discretion in imposing sentences following a criminal conviction, and any sentence challenged on appeal will only be overturned if the sentence constitutes an abuse of discretion. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). In determining the appropriate sentence to impose, a trial court must balance several factors, including the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, his personal history, and his rehabilitative potential. *People v. Quintana*, 332 Ill. App. 3d 96, 106 (2002). The sentencing court must also consider whether the sentence appropriately reflects the seriousness of the defendant's conduct, as well as any extenuating circumstances. *People v. Ziporyn*, 106 Ill. 2d 419, 422 (1985). When a trial court sets an arbitrary, oppressive or unjust sentence, a reviewing court has the power and the duty to intervene to reduce the term. *People v. Gleckler*, 82 Ill. 2d 145, 171 (1980); *United States v. Leyva*, 513 F.2d 774, 779 (5th Cir. 1975).

¶ 43    Under the facts and circumstances of this case, I would find that the trial court abused its discretion in sentencing Geiger to a term of 20 years. First, while his criminally contemptuous conduct, refusing to testify in a first degree murder trial, was a serious offense, it did not constitute a violent act, nor did it hinder the prosecution of the murder defendant. The record established that Geiger was called to give testimony that was cumulative in nature and that the defendant in the murder trial was convicted without Geiger's testimony. The record also established that the trial at which Geiger refused to testify was the second trial on that charge, and Geiger was not even called to testify in the original trial.

¶ 44    Second, while the trial court found that Geiger was fully aware of the contemptuous nature of his conduct, the record clearly established that he was misinformed by the court of the consequences of his conduct. At the time he refused to testify, Geiger was informed by

the judge that he could receive a sentence of 180 days in jail or a "period of years." While it is true that 20 years is a "period of years," I would find it arbitrary, oppressive and unjust to impose a 20-year sentence after such a vague admonishment. Moreover, the record indicates that Geiger labored under the genuinely held but mistaken belief that he had a constitutional right not to testify.

¶ 45     A third basis for finding the sentence to be an abuse of discretion is the trial court's finding that the defendant was not motivated, at least in part, out of a fear of retaliation. The record clearly established that the defendant in the murder trial was a gang member, and at least one other witness against that defendant had received threats. The record is also clear that Geiger, himself a gang member, was aware of those threats. Clearly, the threat of retaliation weighed on Geiger when he decided not to testify in the murder trial of a fellow gang member. That risk at least partially explains his actions and should have been considered a factor in mitigation.

¶ 46     The fourth problem with the 20-year sentence for refusing to testify at trial is that it is four times longer than the maximum nonextended term for perjury, which is 5 years. 720 ILCS 5/32-2(e) (West 2008). While I recognize that courts do not engage in cross-comparative analyses of sentences for different crimes (*People v. Sharpe*, 216 Ill. 2d 481, 519 (2005)), I nonetheless find the extreme disparity between the sentence for refusing to testify imposed by this court and the maximum the defendant could have received for testifying falsely under oath to be indicative that the sentence imposed upon Geiger in the instant matter did not properly weigh the nature and circumstances of the crime. See *United States v. Gracia*, 755 F.2d 984 (2d Cir. 1985); *United States v. Gomez*, 553 F.2d 958 (5th Cir. 1977).

¶ 47     Given the facts and circumstances of this matter, I would find that the trial court abused its discretion in imposing a 20-year sentence. I would remand the matter to the circuit court for imposition of an appropriate sentence.